IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| JERRY M. BLEVINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:10-CV-619-WKW [WO] |
| | ) | |
| CITY OF TUSKEGEE, | ) | |
| ALABAMA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court are Defendants' Motion to Dismiss (Doc. # 9) and Amended Motion to Dismiss (Doc. # 13), filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff Jerry M. Blevins filed a response in opposition to the motions (Doc. # 16), and Defendants filed a reply (Doc. # 18). The issue raised by the motions is whether the doctrine of *res judicata* or, alternatively, the doctrine of collateral estoppel bars this 42 U.S.C. § 1981 action alleging racial discrimination and retaliatory discharge. After careful consideration of the arguments of counsel, the relevant law, and the pertinent facts as taken from the record, the court finds that the motions are due to be granted on the ground of *res judicata*. Supplemental jurisdiction over the remaining state law claims will be declined.

**I. JURISDICTION AND VENUE**

Jurisdiction is exercised pursuant to 28 U.S.C. §§ 1331 and 1367. The parties do not contest personal jurisdiction or venue, and the court finds allegations sufficient to support both.

## II.  STANDARD OF REVIEW

*Res judicata* may be raised in a Rule 12(b)(6) motion to dismiss when the allegations on the face of the complaint "show that an affirmative defense bars recovery on the claim." *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001).  It also may be raised *sua sponte* when "both actions were brought before the same court." *Shurick v. Boeing Co.*, 623 F.3d 1114, 1116 n.2 (11th Cir. 2010) (citation and internal quotation marks omitted).

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8:  "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  While the complaint need not set out "detailed factual allegations," *Twombly*, 550 U.S. at 555, it must provide sufficient factual amplification "to raise a right to relief above the speculative level," *id.*; *see also James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 (11th Cir. 2008) (observing that *Twombly* retired "the often-criticized 'no set of facts' language previously used to describe the motion to dismiss standard." (citation omitted)).

## III.  FACTS

This 42 U.S.C. § 1981 action has its genesis in a prior Title VII action filed by Mr. Blevins and adjudicated in this court.  Defendants argue that *res judicata* and/or collateral estoppel foreclose Mr. Blevins from reigniting the dispute surrounding his appointment as

2

the City of Tuskegee's municipal prosecutor and his subsequent termination. Mr. Blevins disputes the application of *res judicata* and collateral estoppel. To understand the arguments, it is helpful initially to outline the salient facts of the prior lawsuit.

**A.     The Prior Lawsuit (*Blevins* I)**

On February 24, 2009, Mr. Blevins filed an employment discrimination action in the United States District Court for the Middle District of Alabama against the City of Tuskegee, Alabama ("City") and five city officials. *Blevins v. City of Tuskegee, Ala.*, No. 3:10cv619-WKW (M.D. Ala. Feb. 24, 2009) ("*Blevins* I"). (*Blevins* I Compl. (Ex. A to Doc. # 13).) The named officials were Alfred J. Davis, Johnny Ford, Omar Neal, Mae Dorris Williams, and Willie Louise Fields (collectively, "Defendants"). At all times material to the allegations in *Blevins* I, Mr. Davis was the City manager; Mr. Ford was the mayor of Tuskegee; and Ms. Williams and Ms. Fields were members of the City council. Mr. Davis, Mr. Ford, Ms. Williams and Ms. Fields were sued in their individual and official capacities. Mr. Omar was sued in his official capacity as the mayor in office at the time *Blevins* I was filed.

In that lawsuit, Mr. Blevins alleged race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. ("Title VII") and state law claims for fraud in the inducement, breach of contract, negligence, and statutory racial discrimination. (*Blevins* I Compl.) More specifically, Mr. Blevins claimed that he was denied family health insurance coverage during his tenure as City prosecutor on the basis of his race, Caucasian. He also alleged that he was terminated in retaliation for notifying the City council of his intent to file a complaint with the Equal Employment Opportunity Commission ("EEOC")

3

about the alleged racial discrimination in the denial of his health insurance benefits. (*Blevins* I Compl. ¶¶ 27-34.)

### 1.     *Mr. Blevins's Appointment*

In May 2005, Mr. Blevins learned that the City was accepting applications for municipal judge and municipal prosecutor. (*Blevins* I Compl. ¶ 10.) He submitted his application for the position of municipal prosecutor. (*Blevins* I Compl. ¶ 11.) Mr. Blevins was interviewed by then-Mayor Ford and a five-member City council in September 2005. (*Blevins* I Compl. ¶ 12.) On November 3, 2005, Mr. Blevins was notified that he had been appointed as municipal prosecutor, and he assumed his duties immediately. (*Blevins* I Compl. ¶¶ 13-15.) At the time Mr. Blevins was appointed, and throughout Mr. Blevins's tenure as municipal prosecutor, Albert C. Bulls, III, ("Judge Bulls") an African-American male, was the City's municipal judge. (*Blevins* I Compl. ¶ 16.)

### 2.     *Conflicts Between Mr. Blevins and Judge Bulls*

Although the relationship between Mr. Blevins and Judge Bulls began on good terms, it soured in July 2006, when Mr. Blevins says he witnessed Judge Bulls engage in "unethical conduct" by "verbally attacking" a victim of an assault during a restitution hearing in municipal court. (*Blevins* I Compl. ¶¶ 17-18.) Mr. Blevins filed a complaint against Judge Bulls with the Judicial Inquiry Committee ("JIC") concerning the verbal attack. (*Blevins* I Compl. ¶ 19; JIC Compl. (Ex. C to Doc. # 1).) In addition, Mr. Blevins filed a Writ of Mandamus and Emergency Stay with the Circuit Court in Macon County regarding certain rulings made by Judge Bulls during the matter in which the alleged unethical conduct

occurred.  (*Blevins* I Compl. ¶ 19; Writ of Mandamus (Ex. D to Doc. # 1)).  Allegedly in retaliation against Mr. Blevins for filing the JIC complaint, Judge Bulls made "false and/or misleading accusations" against Mr. Blevins to the City council and attempted to provoke confrontations with Mr. Blevins during court proceedings.  (*Blevins* I Compl. ¶ 20.)  In response, Mr. Blevins filed a supplemental complaint with the JIC detailing the retaliatory measures taken by Judge Bulls.  (*Blevins* I Compl. ¶ 21; JIC Suppl. Compl. (Ex. E to Doc. #1).)

### 3. *Family Health Insurance Coverage*

Mr. Blevins alleged that the City subjected him to "disparate terms and conditions of . . . employment" because of his race when it refused to provide him family health insurance coverage, while providing Judge Bulls, who worked in the same "job classification," such coverage.  (*Blevins* I Compl. ¶ 28.)  During his tenure as City prosecutor, Mr. Blevins repeatedly asked questions and complained about the denial of his health insurance coverage. (*Blevins* I Compl. ¶ 31.)  On March 1, 2007, Mr. Blevins notified Mr. Davis of his belief that the denial of health insurance coverage was racially motivated and that he had contacted the EEOC concerning the matter.  (*Blevins* I Compl. ¶ 31.)

### 4. *Mr. Blevins's Termination*

The Mayor and City council voted to terminate Mr. Blevins as the municipal prosecutor and notified Mr. Blevins of his termination, effectively immediately, on March 2, 2007.  (*Blevins* I Compl. ¶¶ 23-24.)  Mr. Blevins alleged that his termination was in

retaliation for contacting the EEOC with regard to his suspicions of racial discrimination. (*Blevins* I Compl. ¶¶ 31-32.)

### 5. *Final Judgment in Blevins* **I**

After full briefing of the issues by the parties, the court granted Defendants' motion for summary judgment on Mr. Blevins's Title VII claims. The summary judgment ruling was predicated on the sole ground that Mr. Blevins "was not an 'employee' for purposes of Title VII" because he "was acting as an appointee on the policymaking level when the alleged discrimination occurred." (*Blevins* I Mem. Op. 13, 14 (Ex. B to Doc. # 13).) Because the court dismissed all the claims over which it had original jurisdiction, it declined jurisdiction over the supplemental state law claims. (*Blevins* I Mem. Op. 14.) The Memorandum Opinion and the Final Judgment were both entered on June 18, 2010. (Final Judgment (Ex. C to Doc. # 13).)

### B. The Present Lawsuit (*Blevins* II)

Mr. Blevins filed the present lawsuit on July 16, 2010 (*Blevins* II), against the same six Defendants named in *Blevins* I. *Blevins* II undisputedly is predicated on the same set of facts alleged in *Blevins* I. Unlike *Blevins* I, no Title VII claim is alleged. Rather, Mr. Blevins brings his race discrimination and retaliation claims, the very ones asserted in *Blevins* I, under a different remedial vehicle, 42 U.S.C. § 1981. The same state law claims as alleged in *Blevins* I also are brought in *Blevins* II. (*Blevins* II Compl. ¶¶ 29-50 (Doc. # 1).) All in all, the present action undisputedly involves the same parties and the same underlying factual events.

Defendants filed a Rule 12(b)(6) motion to dismiss the Complaint based upon the doctrines of *res judicata* and collateral estoppel. (Doc. # 9.) They amended that motion the next day for the purpose of attaching the following exhibits: (1) the *Blevins* I complaint; (2) the Memorandum Opinion entered in *Blevins* I; and (3) the Final Judgment entered in *Blevins* I. (Exs. A-C to Doc. # 13.)

## IV.  DISCUSSION

### A.     Judicial Notice and Rule 12(b)(6) Motions

Before turning to the preclusion issues, the court observes that it properly may take judicial notice of the pleadings and orders in *Blevins* I, without "converting [the] motion to dismiss into a motion for summary judgment." *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) (citing *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999)). This is because those pleadings and orders are matters of public record and "'not subject to reasonable dispute.'" *Id.* (quoting Fed. R. Evid. 201(b)). The court's familiarity with *Blevins* I also should be noted, as the undersigned presided over *Blevins* I and entered the Memorandum Opinion and Final Judgment at issue now.

### B.     *Res Judicata*

Defendants argue that the doctrine of *res judicata* precludes Mr. Blevins from litigating the present action. Federal principles of *res judicata* govern the analysis. *See CSX Transp., Inc. v. Bhd. of Maint. of Way Emps.,* 327 F.3d 1309, 1316 (11th Cir. 2003) ("[F]ederal preclusion principles apply to prior federal decisions, whether previously decided in diversity or federal question jurisdiction."). "*Res judicata* bars the filing of claims which

were raised or could have been raised in an earlier proceeding." *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999) (citing *Citibank N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1501 (11th Cir. 1990)). Specifically, *res judicata* will bar a subsequent action if the following four elements are present: (1) there was a final judgment on the merits; (2) the prior decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the prior and present causes of action are the same. *Citibank*, 904 F.2d at 1501.

Defendants argue that all four elements of *res judicata* are satisfied. They contend that *Blevins* I and II arise from an identical factual predicate concerning the alleged racially motivated denial of health benefits to Mr. Blevins during his tenure as City prosecutor and his alleged retaliatory termination for complaining about that perceived racial discrimination. They further argue that there is an identity of parties in both actions. (Defs. Am. Mot. ¶¶ 2, 12, 15 (Doc. # 13).) The judgment entered in *Blevins* I in favor of Defendants on Mr. Blevins's Title VII claims of race discrimination and retaliation was a final judgment on the merits rendered by a court of competent jurisdiction. Finally, although the legal basis for relief in this case is § 1981, rather than Title VII as relied upon in *Blevins* I, Defendants assert that for *res judicata* purposes, the causes of action are "exactly the same" (Defs. Am. Mot. ¶ 13), and hence, that the § 1981 claims should have been brought in *Blevins* I (Defs. Reply 2 (Doc. # 18).)

Mr. Blevins does not dispute that elements two and three are met. (*See* Pl. Resp. to Mot. 2 (Doc. # 16) (*Blevins* I "was rendered by this very court," and "the parties were identical."). These elements require no further discussion, except as noted below.[1]

Mr. Blevins also does not dispute that element four is met, and the court agrees. In this circuit, "'[t]he principal test for determining whether the causes of action are the same is whether the primary right and duty are the same in each case. In determining whether the causes of action are the same, a court must compare the substance of the actions, not their form.'" *Ragsdale*, 193 F.3d at 1239 (quoting *Citibank*, 904 F.2d at 1503). "'It is now said, in general, that if a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action, . . . the two cases are really the same "claim" or "cause of action" for purposes of *res judicata*.'" *Id.* (quoting *Citibank*, 904 F.2d at 1503).

A comparison of the two complaints reveals that they are virtually identical. In each case, Mr. Blevins alleges that: (1) he was appointed City prosecutor for a term beginning in November 2005 and ending in September 2008; (2) he was denied family health insurance coverage as a benefit of serving as City prosecutor, even though an appointed African-American City judge received health insurance coverage; (3) he complained to a City official that the denial of health insurance coverage to him was racially motivated and informed the

---

[1] The only distinction regarding the parties is that, in the present lawsuit, Mr. Ford is sued in his individual and official capacities, whereas in *Blevins* I, Mr. Ford was sued only in his individual capacity. *Res judicata* operates to prevent subsequent litigation against government officials sued in their official capacities when the initial litigation was against the governmental entity itself. *See Coggins v. Tallapoosa Cnty. Dep't*, No. 3:08cv944, 2009 WL 1738034, at *4 (MD. Ala. June 17, 2009) (discussing *res judicata*'s privity principles). In an official capacity action, Mr. Ford is effectively the same party as the City, which was named in *Blevins* I.

9

official that he had contacted the EEOC about the perceived racial discrimination; and (4) he was terminated as City prosecutor. It is patent, as aptly noted by Mr. Blevins, that "the factual situation from which the instant case arises is the same factual situation which gave rise to *Blevins* I." (Pl. Resp. to Mot. 2.) No doubt, then, *Blevins* I and this action are based upon the same nucleus of operative fact. Moreover, in *Blevins* I and in this action, Mr. Blevins seeks to right the same alleged wrongs – racial discrimination in the terms and conditions of his employment as City prosecutor and a retaliatory termination. The only difference in this action and *Blevins I* is the legal basis for relief, a legal basis that Mr. Blevins does not refute "could have been raised in [*Blevins* I]." *Ragsdale*, 193 F.3d at 1238. Under the fourth element, Mr. Blevins cannot avoid *res judicata* by raising a new legal claim (*i.e.*, § 1981) to pursue his racial discrimination and retaliation claims.

The discussion now turns to the first element requiring a final judgment on the merits. This is the element upon which Mr. Blevins focuses. He does not dispute the general principle that "[a] judgment rendered upon a motion for summary judgment is a final judgment on the merits and is entitled to the full preclusive effect of any final judgment." *Bazile v. Lucent Techs.*, 403 F. Supp. 2d 1174, 1181 (S.D. Fla. 2005) (citing *Exhibitors Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*, 517 F.2d 110 (5th Cir. 1975)); *see also United States v. One Colt Python .357 Revolver*, 845 F.2d 287, 289 (11th Cir. 1988) ("The disposition of a case on summary judgment grounds represents a final decision on the merits and forecloses subsequent litigation."). He asserts, however, that this general principle is inapplicable here. He contends that the final judgment in *Blevins* I was not "on the merits"

10

for purposes of *res judicata* because it rested solely on the "legal determination" that Mr. Blevins was not an "employee" within the meaning of Title VII. (Pl. Resp. to Mot. 2-4.) Because a § 1981 litigant need not satisfy Title VII's definition of "employee," Mr. Blevins argues that the factual merits of his § 1981 claim "were neither tried . . . nor analyzed" by the court in *Blevins* I. (Pl. Resp. to Mot. 6-7.) In a similar vein, he argues that *Blevins I* "could not possibly have reached the merits, because it was never necessary for the Court to utilize the *McDonnell Douglas* analysis," which is the substantive analysis that applies not only to his Title VII claims in *Blevins I*, but also to the § 1981 claims. (Pl. Resp. to Mot. 4 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *see Bryant v. Jones*, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009) (noting that § 1981 and Title VII claims, where the facts are the same, are subject to the same standards and analytical framework of proof). Defendants, on the other hand, contend that the summary judgment ruling was a dismissal "based in substance," not for lack of subject matter jurisdiction, and was entered only after Mr. Blevins "had full opportunity to present and argue his case." (Defs. Reply 3.) The judgment, they say, was "on the merits." (Defs. Reply 3.)

Defendants are correct that a judgment dismissing a case for "lack of subject matter jurisdiction . . . plainly is not an adjudication on the merits that would give rise to a viable *res judicata* defense." *Davila v. Delta Air Lines, Inc*, 326 F.3d 1183, 1188 (11th Cir. 2003). For *res judicata* purposes, "'ordinarily a judgment dismissing an action or otherwise denying relief for want of jurisdiction, venue, or related reasons does not preclude a subsequent action in a court of competent jurisdiction on the merits of the cause of action originally involved.'"

*Sewell v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 94 F.3d 1514, 1518 (11th Cir. 1996) (quoting 1B James W. Moore, Moore's Federal Practice ¶ 0.405[5] (2d ed. 1996)). The court first addresses whether the determination in *Blevins* I that Mr. Blevins failed to satisfy Title VII's definition of "employee" because he was an appointed policy maker was a jurisdictional issue. For the following reasons and based upon the teachings of *Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006), the court finds that it was not.

Title VII's definition of an "employee" is set forth in subsection (f) of 42 U.S.C. § 2000e, and provides that an "'employee' shall not include . . . an appointee on the policy making level." § 2000e(f). In *Arbaugh*, the Court was entrenched in a neighboring subsection, that is, § 2000e(b), which defines an "employer" as one that employs fifteen or more employees. The issue was whether this employee numerosity requirement "affects federal-court subject-matter jurisdiction or, instead, delineates a substantive ingredient of a Title VII claim for relief." *Id.* at 503. *Arbaugh* established a "bright line" rule that "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Id.* at 516. Applying that test, the Court observed that Title VII's definition of "employer" was not contained in Title VII's jurisdictional provisions, 42 U.S.C. § 2000e-5(f)(3), but "in a separate provision that 'does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts.'" *Id.* at 515 (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982)). Accordingly, *Arbaugh* held "that the threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief, not a jurisdictional issue." *Id.* at 516.

Like the employee numerosity requirement, as stated, the statutory provision that excludes appointed policy makers from the Title VII definition of "employee" is set forth in the definition section of the statute. *See* § 2000e(f). There is no indication within § 2000e that Congress deemed an employee's status to be a threshold jurisdictional requirement. Based upon *Arbaugh*'s "bright line" rule, the finding in *Blevins* I that Mr. Blevins was excepted from the definition of a Title VII "employee" and, thus, not entitled to Title VII's protections did not bear on the court's jurisdiction. The Fourth Circuit reached the same conclusion in an unpublished decision. *See Townsend v. Shook*, 323 F. App'x 245, 250 (4th Cir. 2009) ("[W]e hold that application of Title VII's personal staff exclusion [set out in § 2000e(f)] does not present a lack of subject matter jurisdiction issue." (citing *Arbaugh*, 546 U.S. at 516)).

*Arbaugh* was not a *res judicata* decision; its holding was not made within the confines of deciding when a final judgment is "on the merits" for purposes of *res judicata*. Nonetheless, *Arbaugh* has provided a clear rule, and, when applied to § 2000e(f), mandates a finding that a judgment dismissing a Title VII action for failure of the plaintiff to qualify as a covered "employee" does not implicate subject matter jurisdiction. Based upon *Arbaugh*, this court would be ill-advised to carve out a different result for purposes of *res judicata*'s requirement that the final judgment be on the merits. And, no party has asked this court to do so. With the issue settled that Mr. Blevins's status as a Title VII "employee" was not jurisdictional, it is apparent that *Davila*'s holding does not save *Blevins* II from the *res judicata* bar. *See Davila*, 326 F.3d at 1188.

13

The root of Mr. Blevins's problem is that his arguments misconstrue the "on the merits" terminology of *res judicata*. To be certain, as Mr. Blevins proffers, a summary judgment decision is "on the merits" when it disposes of a Title VII action based upon an analysis of the *McDonnell Douglas* precepts. The case law cited by Mr. Blevins supports that general principle. *See, e.g., Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354 (11th Cir. 1998). The inverse is not always true, however – *i.e.*, that a final judgment in Title VII litigation that is not based upon an analysis of *McDonnell Douglas* cannot be "on the merits." Mr. Blevins cites no authority for this inverse proposition. That is not surprising, as it is well established "that an entire claim may be precluded by a judgment that does not rest on any examination whatever of the substantive rights asserted." 18A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4435 (3d ed. 1998); *see also Medina v. INS*, 993 F.2d 499, 503 (5th Cir. 1993) ("Although jurisprudence has required traditionally that the judgment in the first case be 'on the merits,' it is more accurate to state that 'in the first litigation there was an opportunity to get to the merits.'" (internal quotation marks and citation omitted)). *Nilsen v. City of Moss Point, Miss.*, 701 F.2d 556 (5th Cir. 1983), cited by Defendants, is particularly illustrative on this point.

In *Nilsen*, the Fifth Circuit addressed whether a judgment dismissing the plaintiff's prior Title VII lawsuit for failure to meet that statute's "timeliness requirements" was "on the merits" for purposes of res *judicata*. *Id.* The Fifth Circuit had the benefit of the holding in *Zipes*, just as this court has the benefit of the holding in *Arbaugh*, discussed above. Based upon *Zipes*, the Fifth Circuit held that "the timely filing requirements of Title VII are to be

14

treated as limitations periods for all purposes." *Id.* at 562. Because *Zipes* had clearly pronounced "that these requirements are not jurisdictional" (but rather were akin to a statute of limitations), the *Nilsen* court observed that it was "beyond [its] power to declare them to be so." *Id.* Moreover, the *Nilsen* court explained that a timebar dismissal, unlike a dismissal for lack of jurisdiction, "assumes or decides that the court could have spoken but refuses to do so beyond declaring the claim to be stale." *Id.* A timebar "determination bars not only the stale claim asserted but any others, though themselves still timely, that are part of the same cause of action." *Id.* Accordingly, the judgment in the plaintiff's prior Title VII action was "on the merits" for purposes of *res judicata*. *Id.; see also Wakefield v. Cordis Corp.*, 304 F. App'x 804, 806 (11th Cir. 2008) ("[A] ruling based on statute of limitations is a decision on the merits for *res judicata* purposes." (citing *Mathis v. Laird*, 457 F.2d 926, 927 (5th Cir. 1972)).

Even though *Blevins* I did not make it to a full-fledged substantive analysis, the final judgment in *Blevins* I was "on the merits." The fact that the *McDonnell Douglas* analysis was not reached in *Blevins* I does not preclude application of *res judicata* to this § 1981 action.

Because all four elements of *res judicata* are satisfied as to the federal law claims, *Blevins* II is barred by the doctrine of *res judicata*. Mr. Blevins had his apple in *Blevins I*. He chose only to take a Title VII bite, and not a § 1981 bite. The doctrine of *res judicata* now precludes Mr. Blevins from taking another bite of that apple in this lawsuit. *See Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 184 (6th Cir. 1990) ("Although principles of . . . *res*

*judicata* may effectively keep civil rights plaintiffs from getting two bites at the apple, they, at least initially, often have two apples to bite."). As summed up in *Nilsen*, it is "settled that one who has a choice of more than one remedy for a given wrong, . . . may not assert them serially, in successive actions, but must advance all at once on pain of bar." 701 F.2d at 560.

## C.  Collateral Estoppel

Defendants also rely on the doctrine of collateral estoppel as a bar to the federal law claims. Because the doctrine of *res judicata* precludes this lawsuit, it is unnecessary to address the parties' arguments on collateral estoppel.

## D.  State Law Claims

A district court may decline to exercise supplemental jurisdiction over state law claims if it has dismissed all claims over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3). Based upon this authority, having concluded that all federal claims are subject to dismissal based upon *res judicata*, the court declines to exercise supplemental jurisdiction over the remaining state law claims.

## V.  CONCLUSION

Accordingly, it is ORDERED that Defendants' Motion to Dismiss (Doc. # 9) and Amended Motion to Dismiss (Doc. # 13) are GRANTED on the basis that Mr. Blevins's § 1981 claims are barred by *res judicata*. Jurisdiction over the supplemental state law claims is DECLINED, pursuant to 28 U.S.C. § 1367(c)(3).

An appropriate judgment will be entered.

DONE this 11th day of March, 2011.

                                              /s/ W. Keith Watkins
                                 UNITED STATES DISTRICT JUDGE